MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone:   (520) 624-8886
Fax:       (520) 798-1037
Email:    ecfbk@mcrazlaw.com
Michael McGrath:    mmcgrath@mcrazlaw.com
David J. Hindman:    dhindman@mcrazlaw.com

AND

COHEN KENNEDY DOWD & QUIGLEY, P.C.
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Phone: (602) 252-8400
Fax:     (602) 252-5339
Daniel Dowd: dowd@ckdqlaw.com
Daniel Durchslag: ddurchslag@ckdqlaw.com

Attorneys for Secured Creditor 10K, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| WVSV HOLDINGS, LLC, | Case  No.:     2:12-bk-10598-RJH |
| Debtors. | |

## AMENDED DISCLOSURE STATEMENT IN SUPPORT OF CREDITOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED AUGUST 2013

**Table of Contents**

I.     INTRODUCTION AND REPRESENTATIONS ...................................................... 3
       A. Introduction ................................................................................................. 3
       B. Representations ............................................................................................ 3
       C. Defined Terms .............................................................................................. 4
       D. Source of Information for the Disclosure Statement .................................. 4
II.    BACKGROUND ............................................................................................... 5
       A. Bankruptcy Filing was Outgrowth of State Court Litigation ..................... 5
       B. Asset Description and Indebtedness ............................................................ 6
III.   EVENTS SINCE THE FILING OF CHAPTER 11 ......................................... 7
IV.    SUMMARY OF THE CREDITOR'S PLAN OF REORGANIZATION ........... 7
V.     CLASSIFICATION OF CLAIMS AND INTERESTS .................................... 10
       Class 1 – KPHV Claim. ................................................................................. 10
       Class 2 – 10K Judgment Claim ..................................................................... 11
       Class 3 – General Unsecured Claims. ........................................................... 11
       Class 4 –10K Secured Claim. ........................................................................ 12
       Class 5 – Pacific Coach / Spurlock Members' Claims .................................. 12
       Class 6 – 10K Litigation Claim. .................................................................... 14
       Class 7 – Administrative Claims. .................................................................. 15
       Class 8 – Interests of Members. .................................................................... 16
       Class 9 – Maricopa County Secured Tax Claim. .......................................... 17
       Class 10 – Robert and Marie Hansen Foundation Claim. ............................. 18
VI.    PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN ............ 18
VII.   MEANS FOR IMPLENTATION AND FUNDING THE PLAN ........................ 19
VIII.  CRAM-DOWN OF NON-ACCEPTING CLASSES .................................... 21
IX.    TREATMENT OF EXECUTORY CONTRACTS ......................................... 21
X.     PRESERVATION OF LITIGATION CLAIMS ............................................. 22
XI.    EXCULPATION AND LIMITATION OF LIABILITY ................................. 23
XII.   RETENTION OF JURISDICTION ................................................................ 24
XIII.  MODIFICATION OF PLAN ........................................................................... 25
XIV.   LIQUIDATION ANALYSIS ........................................................................... 25
XV.    RISK ANALYSIS ............................................................................................ 27
XVI.   TAX CONSEQUENCES ................................................................................. 27
XVII.  RECOMMENDATION .................................................................................... 28

# I.  INTRODUCTION AND REPRESENTATIONS

### A.  Introduction

Debtor WVSV Holdings, LLC ("WVSV" and/or "Debtor") filed its voluntary Chapter 11 petition on May 14, 2012 (the "Petition Date") in the United States Bankruptcy Court for the District of Arizona (the "Court"), thus commencing this bankruptcy case (the "Bankruptcy Case").

10K, LLC, ("10K" or "Plan Proponent"), a creditor in the Bankruptcy Case, is the proponent of the accompanying *Creditor's First Amended Plan of Reorganization dated August 2013* filed with the Court on August 27, 2013 (the "Plan"). 10K is disseminating this *Creditor's Disclosure Statement* for the purpose of soliciting acceptance of the Plan.

10K believes this Creditor's Disclosure Statement contains information that is material, important, and necessary for creditors and interest holders to arrive at an informed decision in exercising their right to vote for acceptance of the Plan, whether any such interested parties are actually entitled to vote under applicable bankruptcy law. All persons receiving this Disclosure Statement and the attached Plan are urged to fully review the provisions of the Plan and all other attached exhibits and schedules. This Disclosure Statement is not intended to replace careful review and analysis of the Plan, but is submitted in an effort to explants the terms and implications of the Plan as it affects all holders of claims against the Bankruptcy Estate. To the extent any questions arise, 10K urges you to seek independent legal advice.

### B.  Representations

NO REPRESENTATIONS CONCERNING 10K, THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS TO OBTAIN YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON. THE INFORMATION CONTAINED HEREIN HAS NOT

BEEN AUDITED. 10K IS UNABLE TO REPRESENT THAT THE INFORMATION HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH THE INFORMATION DISCLOSED IS ACCURATE TO THE BEST OF 10K'S KNOWLEDGE, INFORMATION AND BELIEF.

THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS TO MAKE AN INFORMED DECISION WHETHER TO ACCEPT OR REJECT THE PLAN.

### C. Defined Terms

Most words or phrases in this Disclosure Statement have their usual and customary meanings. Certain capitalized terms have the same meaning as defined in Exhibit A to the Plan, or as defined in this Disclosure Statement or the Plan. If not otherwise defined, certain terms in this Disclosure Statement have the meaning provided in the Bankruptcy Code or Bankruptcy Rules.

### D. Source of Information for the Disclosure Statement

This Disclosure Statement was prepared by 10K with information gathered by 10K, including information presented by the Debtor in the Debtor's Disclosure Statement filed September 11, 2012, the Debtor's Amended Disclosure Statement filed November 9, 2012, and other information presented by the Debtor to the Bankruptcy Court. 10K has not yet had full access to the books and records of the Debtor. Accordingly, 10K cannot attest to the representations in the Debtor's disclosure statements or other pleadings. 10K also refers interested parties to 10K's *Objection to Debtor's Plan of Reorganization* ("10K Objection") (DE 142), *Motion to Dismiss* (DE 60), *Motion for Relief from Stay to Pursue Action in Non-Bankruptcy Forum, or, in the Alternative, Abstain from Hearing Certain of the Debtor's*

*Claim's Against 10K* (DE 140), and *Motion to Stay Adjudication of Debtor's Objections to Proof of Claim filed by 10K* (DE 158), as the 10K Objection and other pleadings provide a thorough description of potential disputed facts.

## II.    BACKGROUND

### A.    Bankruptcy Filing was Outgrowth of State Court Litigation

The Debtor's Bankruptcy Case is the outgrowth of litigation between Debtor and 10K that has been ongoing since 2003 in the Arizona Superior Court, Court of Appeals, and Supreme Court (the "State Court Litigation" or "Litigation"). The Litigation stems from an improper and illegal attempt involving fraud and a breach of fiduciary duty owed to 10K to transfer 13,260 acres of 10K's property to WVSV. The purportedly transferred acres comprise a single tract of mostly contiguous land (the "Property"). In the bankruptcy proceeding, the Debtor has designated different portions of the Property as Tract A, Tract B and Tract C.

10K was formed in June 1995 to acquire, develop, and sell undeveloped real property located in Buckeye, Arizona. 10K acquired interest in the 13,260 acres (the "Trust Property"). In 2002, at the direction of Debtor's principal, Conley Wolfswinkel, the Debtor secretly conspired with 10K's then-manager Phoenix Holdings, II, L.L.C., ("Phoenix Holdings") to acquire the contract position of Breycliffe, L.L.C., a shell entity to which Phoenix Holdings had unlawfully and without authority agreed to a below market-value sale of what eventually became the Property. Based on Wolfswinkel and the Wolfswinkel-controlled Debtor's role in teaming with Phoenix Holdings to wrongfully divest 10K of its rights to the Trust Property, a Maricopa County jury rendered a verdict against Wolfswinkel and Debtor for aiding and abetting a breach of fiduciary duty and awarded 10K $360 million in damages, including $150 million in punitive damages against Wolfswinkel and Debtor.

In the State Court litigation, 10K also challenges the validity of the underlying transaction that gave rise to the subdivision trust and Debtor's interest in the Property.

In April 2012, the Court of Appeals for the State of Arizona issued an Opinion allowing 10K to challenge the validity of the underlying transaction that gave rise to WVSV's alleged interest in the property and to retry 10K's tort claims that previously resulted in a $360 million verdict against the Debtor and its principals, including Conley Wolfswinkel. Shortly thereafter, WVSV filed the bankruptcy petition on the Petition Date.

### B.    Asset Description and Indebtedness

The assets of the Bankruptcy Estate consist primarily of the Bankruptcy Estate's asserted interests in the Property, which is comprised of approximately 13,260 contiguous acres of undeveloped land planned for future development in Buckeye, Arizona.

The Bankruptcy Estate asserts that it holds fee title to approximately 1,556.5 acres of the Property, which it identifies as "Tract A", subject to the judgment lien of KPHV, the judgment lien of 10K, the 10K profit participation deed of trust, taxes owed, and the claim of the Robert and Marie Hanson Foundation for post-petition financing.

The Bankruptcy Estate asserts that it holds the beneficial interests in Tracts B and C. Fee title to Tract B is held by First American Title Insurance Company as Trustee of its Trust #8435 (the "Senior Trust"). Fee title to Tract C is held by First American Title Insurance Company as Trustee of its Trust #8436 (the "Junior Trust", and together with the Senior Trust, the "Subdivision Trust"). WVSV is the second beneficiary under the Junior Trust. 10K is the first beneficiary under the Junior Trust, and the second beneficiary under the Senior Trust. The first beneficiary under the Senior Trust is Pacific Coach/Spurlock. Although the Debtor has asserted that Pacific Coach and Spurlock are creditors of the Bankruptcy Estate, the Debtor's obligation under the Subdivision Trust is to 10K only.

10K challenges the validity of the underlying transactions by which WVSV first obtained its interests in the Property, and nothing in the Plan is intended to waive any claim of 10K to the title to the Property.

**III.    EVENTS SINCE THE FILING OF CHAPTER 11**

Since the Petition Date, the Debtor filed an initial Plan of Reorganization, which it then withdrew for lack of creditor support. The Debtor filed a First Amended Plan of Reorganization, but did not pursue confirmation until days before the confirmation hearing on 10K's Creditor Plan of Reorganization. The Debtor filed a motion to sell approximately 855 acres of the Property to Terry Manley, but after a hearing, the Court found that there was no business justification for the proposed sale and that the Debtor failed to adequately protect 10K's interest in the property, and therefore denied the proposed sale. On May 15, 2013, the Bankruptcy Court granted 10K's request for stay relief, clearing the way for 10K to pursue the Litigation in the state court.

On June 3, 2013, the Bankruptcy Court held a hearing on both 10K's Creditor's Plan of Reorganization and the Debtor's First Amended Plan of Reorganization. The Court denied confirmation for both plans, and directed the Debtor and 10K to mediation. To date, the mediation has not been successful.

**IV.    SUMMARY OF THE CREDITOR'S PLAN OF REORGANIZATION**

The 10K Amended Creditor's Plan proposes to reinstate or repay creditors in full and on the Effective Date, thirty days after Plan confirmation. The Property not transferred herein will remain property of the Bankruptcy Estate, which will continue in existence until the remainder of the Property is disposed of, only after resolution of all claims affecting title to the Property. Disposition of Property shall occur only by further order of this Court. This Plan provides for an Option A and an Option B for the Debtor. The Debtor may elect Option A or B. If no election is made, the Debtor will be deemed to have elected Option B.

Option A will be accomplished by the sale to 10K of approximately 855 acres comprising a portion of Tract A. The Debtor previously filed a *Motion for Authorization to Sell Real Property* seeking authority to sell the same 855 acres to Terry Manley, free and clear of all liens, which request was rejected by the Bankruptcy Court. 10K believes any

sale to a third-party would be clouded by the claims of 10K to the Property as set forth in the pending State Court Litigation. 10K's claims to the title of the Property would prevent the Bankruptcy Estate from being able to close a sale to a third-party. With Option A, the Plan Proponent, 10K, will purchase the 855 acres through the Plan for a purchase price of $8,551,000 (the "Sale"), which is a higher offer than the $8,550,000 offer included in the Debtor's Motion to Sell to Terry Manley. The sale to 10K would be a better offer than can be made by any third-party because a sale to 10K would be able to close as it would be a sale to the party who has a claim against the Property and who objects on legal grounds to the Manley sale. Furthermore, unlike any potential third-party purchaser of the 855 acres, 10K has a financial interest in the remaining Property. 10K would ensure that development of the 855 acres is consistent with, and to the benefit of, the remaining balance of the Property.

Noted Arizona land use expert Paul Gilbert, who is a member of 10K, has testified that the entire Property would greatly benefit from renegotiating entitlements with the Town of Buckeye and obtaining approval of a new development plan. Mr. Gilbert testified that the 855 acres will play an integral and dispositive role in renegotiating the entitlements and obtaining approval of a new development plan for the remaining Property, and it would be a "disaster" to sell the 855 acres, which is the "gateway" to the Property, to a third party prior to obtaining new entitlements and a new development plan. 10K is the only potential buyer of the 855 acres who also holds an interest in the balance of the Property, and thus the only buyer with a financial interest in ensuring that the development of the 855 acre "gateway" is done in a way to maximize the value and benefit to the remaining Property. The Creditor's Amended Plan provides for a sale of the 855 acres to 10K, which ensures that all of the Property remains part of the efforts to obtain new entitlements and a new development agreement, while also providing funds to the Bankruptcy Estate to satisfy claims.

Under Option A, the net proceeds of the Sale will be used, as necessary, to make all Effective Date payments to Holders of Allowed Claims and Allowed Administrative expenses. The Sale proceeds would be used to reinstate the claim of Pacific Coach/Spurlock (Class 5) pursuant to the terms of the First American Title Trust #8435. After the Effective Date payments, the balance of the Sale proceeds will be held in escrow. The balance of the Estate Property will be held by the Bankruptcy Estate pending resolution of the entitlement to the Property and proceeds in the State Court Litigation. Also pending resolution of the State Court Litigation, the Sale proceeds will be used to timely pay the payment obligations due under the First American Title Trust #8435 until it matures in July 2015. The escrowed sale proceeds would not be sufficient to pay the balloon payment due under the First American Title Trust #8435. If the Debtor fails to make the balloon payment when due, 10K shall have the right to make such payment and receive all of the Debtor's right, title, and interest in that portion of the Property subject to First American Title Trust #8435, which property the Debtor identifies as Tract B, in addition to any other remedies available to 10K.

Under Option B, 10K's judgment claim, secured claim, litigation-related claims, and administrative claims against the Debtor will be deemed satisfied by the transfer from the Bankruptcy Estate to 10K of all of the Estate's real and personal property and contract rights, including as to Tract A, Tract B and Tract C. This will resolve the claims of 10K against the Debtor and claims of the Debtor against 10K and its members, but claims against third parties shall be retained by 10K. In addition, under Option B, the Plan Proponent will, to the extent necessary, provide sufficient funds to make all Effective Date payments, and will take the Property subject to the claim of Pacific Coach/Spurlock pursuant to the terms of the First American Title Trust #8435.

10K estimates that its Plan will result in full payment on the Effective Date to all Holders of Allowed Claims and Allowed Administrative expenses, with the exception of the

unmatured payment obligations under the First American Title Trust #8435, which unmatured obligations will be paid as they become due.

All claims and interests are placed into classes as set forth below. The classes reflect the nature and types of claims listed in the schedules filed by the Debtor. All claims or interests are placed in a particular class to the extent the claim or interest falls within the description of that class. A claim or interest is placed in a particular class for all purposes, including voting on the Plan, confirmation and receiving distributions under the Plan. Claims will not receive distributions unless the claim is an Allowed Claim and has not been paid, released or otherwise settled prior to the Effective Date. The precise treatment afforded creditors and equity holders, and the division of interested parties into classes, is more completely set forth in Article V.

## V.    CLASSIFICATION OF CLAIMS AND INTERESTS

**Class 1 – KPHV Claim.** Class 1 consists of the claims asserted against the Bankruptcy Estate based upon a judgment lien encumbering Tract A and estimated by Debtor to be $313,368.60, plus accrued interest. 10K believes that this claim is held by an insider of the Debtor. The Class 1 claim will be treated as follows:

*On the later of the Effective Date or the allowance of the claim, in exchange for full and complete satisfaction, settlement, release, discharge, and compromise of each and every Allowed Class 1 KPHV Claim, each Holder of such Claim shall be paid the amount equal to such Holder's Allowed Class 1 Claim from cash on hand of the Bankruptcy Estate, or if insufficient, from either the proceeds of the Sale if the Debtor elects Option A or from funds provided by the Plan Proponent if the Debtor elects Option B. Holders of Class 1 Claims shall not retain their Lien against Tract A or any other property in which the Debtor claims an interest.*

**This Class is not impaired, is not entitled to vote, and is deemed to have accepted the Plan.**

**Class 2 – 10K Judgment Claim.** Class 2 consists of the claim of 10K against the Debtor based upon a judgment lien encumbering Tract A and in the principal amount of $284,179.37. The Class 2 claim will be treated as follows:

*10K's Class 2 Claim is allowed in the amount asserted by 10K, without interest.*

**OPTION A:**

*If the Debtor elects Option A, 10K shall have its claim deemed satisfied by a credit against the purchase price to be paid by the Plan Proponent as part of the Sale in an amount equal to 10K's Allowed Class 2 Claim.*

**OPTION B:**

*If the Debtor elects Option B, on the Effective Date 10K shall receive all of the Bankruptcy Estate's right, title, and complete interest, legal and equitable, in and to any real and personal property and contract rights, including as to Tract A, Tract B, and Tract C. 10K will retain any rights and claims it has against non-Debtor third-parties, including Conley Wolfswinkel, and will retain rights against Debtor to the extent necessary so as to maintain and perfect claims against non-Debtor third-parties.*

**This Class is impaired and is entitled to vote on the Plan.**

**Class 3 – General Unsecured Claims.** Class 3 consists of the prepetition claims of unsecured creditors of the Bankruptcy Estate. The Class 3 claims will be treated as follows:

*On the later of the Effective Date or the allowance of such claim, each Holder of an Allowed Class 3 General Unsecured Claim shall either (1) be paid the amount equal to such Holder's Allowed Class 3 Claim from cash on hand, or if insufficient, from either the proceeds of the Sale if the Debtor elects Option A or from funds provided by the Plan Proponent if the Debtor elects Option B, or (2) for any Class 3 Claim of Plan Proponent, have such claim deemed satisfied by a credit against the purchase price to be paid by Plan Proponent as part of the Sale in an amount equal to the Allowed Class 3 Claims.*

**This Class is not impaired and is not entitled to vote on the Plan.**

**Class 4 –10K Secured Claim.** Class 4 consists of the secured claim of 10K in the approximate sum of $45,414,460.06 and secured by a first beneficial interest in First American Title Trust #8436. The Class 4 claims will be treated as follows:

*OPTION A:*

*If the Debtor elects Option A, 10K's Class 4 claim will be allowed in the amount asserted by 10K. 10K's Class 4 Claim will receive no distributions prior to resolution of the Litigation by the State Court. Consistent therewith, except as part of the Sale to 10K, all remaining Estate Property including the Estate's personal, real and equitable property or contract rights, including as to Tract A, Tract B and Tract C, shall remain in the Bankruptcy Estate pending resolution of the State Court Litigation.*

**Under Option A, this Class is impaired and is entitled to vote on the Plan.**

*OPTION B:*

*If the Debtor elects Option B, on the Effective Date 10K shall receive all right, title, and complete interest, both legal and equitable, in and to any real property, personal property, and contract rights of the Bankruptcy Estate, including as to Tract A, Tract B, and Tract C. 10K will retain any rights and claims it has against non-Debtor third-parties, including Conley Wolfswinkel, and will retain rights against Debtor to the extent necessary so as to maintain and perfect claims against non-Debtor third-parties.*

**Under Option B, this Class is impaired and entitled to vote on the Plan.**

**Class 5 – Pacific Coach / Spurlock Members' Claims.** Class 5 consists of the holders of a first beneficial interest in First American Title Trust 8435, in the approximate amount of $11,771,910.64, with a lien against Tract B. This Class may not hold a claim against the Bankruptcy Estate, may not properly be entitled to a vote, and any such right to vote may be held by 10K pursuant to the two trusts, #8435 and #8436, and applicable bankruptcy law. The Class 5 claims will be treated as follows:

1       *Upon the later of the Effective Date or the allowance of each such Claim, to the*
2  *extent there are any defaults with regards to First American Title Trust #8435, the Allowed*
3  *Claim will be reinstated as of the Effective Date in accordance with Sections 1123(d) and*
4  *1124 of the Bankruptcy Code. Any cure or reinstatement payments shall include all amounts*
5  *necessary to cure and reinstate the Claims, including the payment of the attorneys' fees and*
6  *costs incurred by the Claimants, as required or authorized pursuant to applicable*
7  *bankruptcy law, the underlying agreements, and applicable non-bankruptcy law. Each*
8  *Holder of an Allowed Class 5 Claim shall retain its lien against Property, if applicable,*
9  *pursuant to the terms of the First American Title Trust #8435. First American Title Trust*
10 *#8435 will be deemed reinstated and assumed. On and after the reinstatement of First*
11 *American Title Trust #8435, each Holder of an Allowed Class 5 Claim will receive*
12 *payments in the amounts and pursuant to the terms set forth in the First American Title*
13 *Trust #8435.*
14 ***OPTION A***
15      *If the Debtor elects Option A, each Holder of an Allowed Class 5 Claim will receive*
16 *payments as required by the First American Title Trust #8435 from cash on hand of the*
17 *Bankruptcy Estate, or if insufficient, from the proceeds of the Sale. Any payment obligations*
18 *due under the First American Title Trust #8435 will be paid by the Bankruptcy Estate as*
19 *they come due from the escrowed Sale proceeds, pending resolution of the State Court*
20 *Litigation. If the Sale proceeds are insufficient to make any payments due under the Trust*
21 *#8435 when due, it shall be the obligation of the Debtor to timely make such payments. If*
22 *the Debtor fails to make any payment when due, Plan Proponent shall have the right to*
23 *make such payment. If the Debtor fails to timely make a payment when due and Plan*
24 *Proponent pays such payment under the trust agreement, Debtor shall transfer all of its*
25 *right, title and interest, both legal and equitable, in and to Tract B and any and all other*
26 *property of the Debtor that is the subject of First American Title Trust #8435.*

*OPTION B*

*If the Debtor elects Option B, the Bankruptcy Estate shall, as part of transferring all other property to 10K, assign its contractual rights and obligations under the First American Title Trust #8435 and 8436 to 10K. Thereafter, 10K shall, pursuant to the terms of the First American Title Trust #8435, make the payments due thereunder.*

**This Class is not impaired, is not entitled to vote, and is deemed to have accepted the Plan.**

<u>**Class 6 – 10K Litigation Claim.**</u>  Class 6 consists of the claim of 10K in the amount of not less than $360,000,000.00 plus fees, costs, and accruing interest, which claim is the subject of the proof of claim filed by 10K on October 15, 2012, with the exception of the amounts set forth in the attachment to 10K's proof of claim at ¶¶4(b), 4(d)(i) and 4(d)(iv) which are not part of this Class 6 claim, but included in Classes 2, 4, or 7. The Class 6 claim of 10K will be allowed on the Effective Date and treated as follows:

*10K's Class 6 Claim will be determined in the pending State Court Litigation.*

*OPTION A:*

*If the Debtor elects Option A, 10K shall receive no distributions from the Bankruptcy Estate pursuant to its Class 6 claim prior to resolution of the State Court Litigation. The Bankruptcy Estate's legal and equitable interests in its remaining personal or real property after the Sale, including as to Tract A, Tract B and Tract C, shall remain in the Bankruptcy Estate pending resolution of the State Court Litigation.*

**Under Option A, this Class is not impaired and is not entitled to vote on the Plan.**

*OPTION B:*

*If the Debtor elects Option B, on the Effective Date 10K shall receive the Bankruptcy Estate's right, title, and complete interest, both legal and equitable, in and to all real property, personal property, and contract rights, including as to Tract A, Tract B, and Tract*

*C. 10K shall retain any rights and claims it has against non-Debtor third-parties, including Conley Wolfswinkel, and will retain rights against Debtor to the extent necessary so as to maintain and perfect claims against non-Debtor third-parties.*

**Under Option B, this Class is impaired and is entitled to vote on the Plan.**

**Class 7 – Administrative Claims.** Class 7 consists of the Holders of claims for administrative expenses. Administrative expenses are those that have been incurred since the filing of this bankruptcy case on May 14, 2012. Administrative expenses are those set forth in §503 of the Bankruptcy Code, and may include the following:

1. **U.S. Trustee Fees**. *Any amounts owing to the U.S. Trustee will be paid on the Effective Date from cash on hand, or if insufficient, from either the proceeds of the Sale if the Debtor elects Option A or from funds provided by the Plan Proponent if the Debtor elects Option B.*

2. **Professional Fees**. *Any allowed claims for professional fees shall be paid in full from cash on hand, or if insufficient, from either the proceeds of the Sale if the Debtor elects Option A or from funds provided by the Plan Proponent if the Debtor elects Option B,, on the later of the Effective Date or the allowance of such claim. Any person seeking an award by the Bankruptcy Court of Professional fees must file its application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within thirty days after the Confirmation Date.*

3. **10K Payment of Post-petition Interest**. *10K shall have an Allowed Class 7 administrative expense claim related to the July 2012 and July 2013 interest payments of $398,522.16 each, plus contract interest, as set forth in the attachment to 10K's proof of claim filed on October 15, 2012 at ¶ 4(d)(iv). If Debtor elects Option A, 10K's Allowed Class 7 Claim, unless earlier paid by the Bankruptcy Estate, shall be deemed satisfied by a credit against the purchase price to be paid by the Plan Proponent as part of the Sale in an amount equal to 10K's Allowed Class 7 claim. If the Debtor elects Option B,*

*on the Effective Date 10K shall receive all of the Bankruptcy Estate's right, title, and complete interest, legal and equitable, in and to any real and personal property and contract rights, including as to Tract A, Tract B, and Tract C. 10K will retain any rights and claims it has against non-Debtor third-parties, including Conley Wolfswinkel, and will retain rights against Debtor to the extent necessary so as to maintain and perfect claims against non-Debtor third-parties.*

**This Class is not impaired and is not entitled to vote on the Plan.**

**<u>Class 8 – Interests of Members.</u>** Class 8 consists of the pre-confirmation Holders of Membership Interests in the Debtor. 10K believes that the interests are unimpaired because the Plan in no way alters their interests in W.V.S.V. Holdings, LLC. Because it is anticipated that the Holders of Membership Interests in the Debtor will assert the ability to vote, they will be provided the Plan, the Disclosure Statement, and ballots, and the Plan Proponent will abide by any determination of the Bankruptcy Court as to equity's right to vote on the Plan.

***OPTION A:***

*Pursuant to this Option, 10K will purchase 855 acres of Tract A from the Bankruptcy Estate for a purchase price of $8,551,000. 10K shall receive credits against the purchase price for its Allowed Administrative Claims and Claims in Classes 2, 3, and 7. The proceeds from the Sale will be used, to the extent necessary, to pay on the Effective Date all Allowed Claims in Classes 1, 2, 3, 7, 9, and 10, and to pay any amounts necessary to cure defaults with respect to Class 5. The balance of any net Sale proceeds, after payment of Effective Date payments, shall be held in escrow pending resolution of the Debtor's and 10K's entitlement to the Property and proceeds as determined in the State Court Litigation or by other proceedings under state law, and used only to make any ongoing payments pursuant to the terms of the reinstated First American Title Trust #8435 and #8436. Pending state resolution of the State Court Litigation, the remaining Property shall be held by the*

*Bankruptcy Estate and remain free of additional liens or claims, and only distributed by order of the Bankruptcy Court pursuant to the terms of this Plan and the resolution of the State Court Litigation.*

**Under Option A, the Debtor and its members are unimpaired, are not entitled to vote, and are deemed to have accepted the Plan.**

*OPTION B:*

*Under this Option, all right, title and complete interest, both legal and equitable, in and to all real property, personal property and contract rights of the Bankruptcy Estate are transferred to the Plan Proponent, leaving nothing for the Debtor or its members, who will receive no distributions. Under this Option B, the Debtor will receive a full release from 10K of all claims relating to the State Court Litigation except to the extent necessary for 10K to maintain and perfect claims against non-Debtor third-parties.*

**Under Option B, this Class is deemed to have rejected the Plan pursuant to section 1126(g) and is not entitled to vote on the Plan.**

**Class 9 – Maricopa County Secured Tax Claim.** Class 9 consists of the prepetition secured tax claims of Maricopa County against the Debtor in the approximate amount of $21,163.26, and secured by a tax lien against Tracts A, B, and C. The Class 9 claims will be treated as follows:

*On the Effective Date, the Class 9 Maricopa County Secured Tax Claims will be allowed in the principal amount of the tax due together with all interest accrued and accruing at the statutory rate pre-petition, during the administration of the bankruptcy case, and post-confirmation, without penalties. Any liens securing the payment of the Allowed Claim and/or any post-petition administrative property taxes will remain attached to the same property and to the same nature, extent and priority as such liens are currently attached until all amounts secured by such liens are paid in full. The Allowed Class 9 Claims will be paid in full from cash on hand of the Bankruptcy Estate, or if insufficient, from the proceeds*

*of the Sale if the Debtor elects Option A or from funds provided by the Plan Proponent if the*
*Debtor elects Option B.*

**This Class is not impaired and is not entitled to vote on the Plan.**

**Class 10 – Robert and Marie Hansen Foundation Claim.** Class 10 consists of the claim of the Robert and Marie Hansen Foundation against the Debtor for post-petition secured financing provided to the Debtor and secured by a junior lien against Tract A. The Class 10 claim will be treated as follows:

*To the extent the Class 10 Claim is determined not to be an equity contribution or subject to subordination as the claim of an insider or affiliate, the Class 10 Claim will be allowed in the amount advanced to the Debtor pursuant to the Court's Order Granting Debtor's Motion for Order Authorizing Post-Petition Secured Financing Pursuant to Bankruptcy Code Section 364(c)(3).*

*On the later of the Effective Date or the allowance of the claim, in exchange for full and complete satisfaction, settlement, release, discharge, and compromise of the Allowed Class 10 Claim, each Holder of such Claim shall be paid the amount equal to such Holder's Allowed Class 10 Claim from cash on hand of the Bankruptcy Estate, or if insufficient, from either the proceeds of the Sale if the Debtor elects Option A or from funds provided by the Plan Proponent if the Debtor elects Option B. Holders of Class 10 Claims shall not retain their Lien against Tract A or any other property in which the Debtor claims an interest.*

**This Class is not impaired and is not entitled to vote on the Plan.**

**VI.    PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN**

No payments or distributions will be made to creditors unless and until their claims are Allowed. 10K shall have until the first business day which is thirty days after the Effective Date to object to the allowance of any claim. 10K shall have the authority to settle Disputed Claims against the Debtor without further approval of the Bankruptcy Court.

## VII.  **MEANS FOR IMPLEMENTATION AND FUNDING THE PLAN**

Pursuant to Option A, the Plan will be funded by the Bankruptcy Estate's sale of 855 acres of Tract A to 10K for the purchase price of $8,551,000, which sale will close on the Effective Date or as soon thereafter as is reasonable. The Sale by the Bankruptcy Estate of the 855 acres to 10K will generate sufficient proceeds, together with cash on hand of the Bankruptcy Estate, to pay most creditors in full on the Effective Date, to reinstate the Pacific Coach/Spurlock claims, and to make the ongoing, pre-maturity payments to Pacific Coach/Spurlock as the same become due. The Estate will remain open post-confirmation, pending resolution of disputed claims in the State Court Litigation. Jurisdiction will be maintained so as to allow the Estate to implement the Plan after claims are resolved.

Pursuant to Option B, 10K's Class 2 judgment claim, Class 4 secured claim, Class 6 litigation claim, and Class 7 administrative claim against the Bankruptcy Estate will be deemed satisfied by the transfer to 10K of all of the Bankruptcy Estate's right, title, and interests, both legal and equitable, in and to all real property, personal property, and contract rights, including as to Tract A, Tract B, and Tract C. Conditioned upon the transfer of all property and rights of the Debtor contemplated herein, beginning on the Effective Date 10K will pay or credit all allowed claims in Classes 1, 3, 7, and 9. Also beginning on the Effective Date, 10K will cure any defaults with respect to allowed claims in Class 5, and thereafter will assume the ongoing distributions to Class 5 claims pursuant to the terms of the First American Title Trust #8435.

Randy Stolworthy is the manager of 10K, LLC, and a member through entities he controls. 10K has previously raised over $12 million from the existing membership to fund past activities of the LLC. Mr. Stolworthy fully expects to be able to raise sufficient funds from existing members of the LLC to fund all payments due from 10K under the Creditor's Plan of Reorganization.

Under Option A, 10K's funding requirement would be approximately $7.5 million on the Effective Date. Pursuant to Option A, 10K would purchase 855 acres from the Debtors' estate for a purchase price of $8,551,000, with credits against the purchase price for each of 10K's claims under Classes 2, 3, and 7. Under Option B of the Plan, 10K's funding requirement would be approximately $1.1 million on the Effective Date. Pursuant to Option B, 10K would receive the estate's interest in all Estate Property, and 10K would assume the obligations to the third-party creditors, all of which would be paid on the Effective Date except for the unmatured obligations under First American Title Trust #8435.

Mr. Stolworthy has spoken with members of 10K, and the members are prepared to fully fund the Creditor's Plan of Reorganization through equity contributions. 10K expects no difficulties in raising sufficient funds between confirmation of the Creditor's Plan of Reorganization and the Effective Date of the Creditors' Plan through equity contributions of the existing members of 10K. 10K has successfully obtained equity contributions in the past to fund its activities.

To guaranty payment, Mr. Stolworthy has firm commitments from himself, Paul Gilbert, and Leo Beus (all members of 10K), who have available liquid funds in excess of the amounts required under either Option A or Option B of the Plan. These members of 10K have pledged to fund or advance funds needed to make all the Effective Date payments required under the Creditor's Plan of Reorganization, and will make all necessary funds available to 10K in sufficient time to enable 10K to make all required distributions on the Effective Date.

The 10K, LLC membership has always been able to raise sufficient funds to pay its obligations and in fact has also raised funds on short notice during this bankruptcy to cover the necessary administrative expense payment obligations of the Bankruptcy Estate totaling nearly $800,000 when the Debtor failed to timely make such payments.

## VIII. CRAM-DOWN OF NON-ACCEPTING CLASSES

There are not any impaired classes, or classes entitled to vote, other than the classes of claims of 10K, LLC. As the Plan Proponent, 10K, will accept the treatment it has proposed in this plan, there is no need for application of Section 1129(b).

To the extent the Court determines an impaired class exists which does not accept the Plan by the requisite statutory majorities, 10K reserve the right to seek confirmation of this Plan by a "cram-down" of such non accepting class pursuant to Section 1129(b) of the Bankruptcy Code. In the event the Bankruptcy Court declines to impose a "cram-down" on a non-accepting class unless certain modifications are made to the terms and conditions of such class's treatment under this Amended Plan, 10K reserves the right, without re-solicitation to the extent permitted by the Code, to propose such modifications and to confirm this Amended Plan by any required modifications, provided such modifications do not result in total extinguishment of the non-accepting class's claim.

## IX. TREATMENT OF EXECUTORY CONTRACTS

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the Debtor's pre-petition executory contracts and unexpired leases shall be treated as follows:

(1) the unexpired grazing lease between the Debtor and Ted Hazen dba Hazen Farm South shall be assumed by the Bankruptcy Estate if the Debtor elects Option A, and shall be assumed by the Bankruptcy Estate and assigned to 10K if the Debtor elects Option B;

(2) the Purchase and Option Agreement between the Debtor and AGS, LLC, for the sale by the Debtor of a portion of Tract A, shall be rejected as this agreement was previously terminated by the parties;

(3) the Purchase and Sale Agreement between the Debtor and Terry Manley dated January 16, 2013, shall not be assumed and no claim shall be allowed as the Manley purchase offer was surpassed by the higher and better offer of 10K;

(4) the subdivision trust agreements commonly known as First American Title Trust ## 8435 and 8436 entered into by the Debtor and concerning Tract A, Tract B, and Tract C, shall be assumed by the Bankruptcy Estate if the Debtor elects Option A and shall be assumed by the Bankruptcy Estate and assigned to 10K if the Debtor elects Option B; and

(5) the Debtor's agreement to sell 300 acres to Breycliffe, LLC, shall be assumed by the Bankruptcy Estate if the Debtor elects Option A, and shall be assumed by the Bankruptcy Estate and assigned to 10K if the Debtor elects Option B.

Except as provided in this Plan, all other executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected as of the Effective Date.

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to this Plan must be filed with the Bankruptcy Court and/or served upon 10K or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of the Effective Date or the notice of entry of an order approving the rejection of such executory contract or unexpired lease. Any Claim not filed within such time will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor, 10K, and its property. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan.

**X.      PRESERVATION OF LITIGATION CLAIMS**

Except as provided herein or in the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with §1123(b) of the Bankruptcy Code, the Plan Proponent shall retain all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that it has held prior to Plan Confirmation.

Any and all claims of 10K against the Debtor or third parties brought in the State Court Litigation are preserved. If the Debtor elects Option A, all such claims, including

those against the Debtor and the Debtor's alleged claims against 10K, shall be resolved in the State Court. If the Debtor elects Option B, the Debtor shall fully and finally release any and all claims it may have against 10K or its members. Under Option B, 10K's claims against the Debtor shall be deemed satisfied pursuant to the terms of this Plan and the transfer of the Debtor's interest in Property to 10K; however, 10K's Litigation claims against third parties shall be preserved and resolved in State Court and 10K will retain rights against WVSV to the extent necessary so as to maintain and perfect claims against non-Debtor third-parties..

## XI.  EXCULPATION AND LIMITATION OF LIABILITY

Notwithstanding any other provision of this Plan, no holder of a Claim, no other party in interest, none of their respective directors, officers, partners, members, shareholders, agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against 10K, LLC, or any of its respective present or former partners, members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of the estate or of this Plan or the property to be distributed under this Plan, except only to the extent such liability is based on gross negligence, fraud or willful misconduct, and in all respects Plan Proponent shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under this Plan.

As set forth herein, if the Debtor elects Option A, any claims of the Debtor against the Property or 10K under state law are to be resolved by the State Court. If the Debtor elects Option B, the Debtor shall forever release and discharge any and all claims it may have against the Property, other property of the Estate or 10K.

## XII. **RETENTION OF JURISDICTION**

Upon the Effective Date, the Court's jurisdiction shall conclude and it **will not retain jurisdiction** as to any proceedings which relate to:

A.      Determination of the allowance, classification, or priority of claims and interests, costs, attorney's fees, and payment of post-petition interest as to 10K, LLC, Cal X-Tra, Cattletrack 10K LLC, Leo R. Beus, Alan Mishkin, TSRT, LLC, TRST II, LLC, and McWin, LLC, or objections thereto;

B.      Determination of adversary proceedings and contested matters between the Plan Proponent, its members, the Debtor, Conley Wolfswinkel, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases, and the issuance of injunctions or taking such other actions or making such other orders as between the Debtor, related third-parties, and 10K, LLC.

Notwithstanding confirmation or the Effective Date having occurred, and except as otherwise provided by this Plan, **the Court shall retain and have jurisdiction** as is allowed under Title 28 of the United States Code, the Bankruptcy Code, or other applicable law to enforce the provisions, purposes, and intent of the Plan, as to any proceedings which relate to:

A.      To implement the Plan after State Court resolution or settlement of disputed claims.

B.      Determination of any and all applications for allowance or requests for payment of administrative claims, including, without limitation, requests for allowance and payment of compensation and expense reimbursement of professional persons;

C.      Determination of motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and determination of the allowance of any claims resulting from the rejection of executory contracts and unexpired leases;

1         D.      Modification of the Plan pursuant to §1127 of the Bankruptcy Code, prior to

2 the Effective Date, remedy of any defect or omission in the Plan or confirmation order,

3 reconciliation of any inconsistency within the Plan and the loan documents, so as to carry

4 out the intent and purpose of the loan documents;

5         E.      Entry of a final decree closing these Chapter 11 Cases; and

6         F.      Determination of such other matters, and for such other purposes, as may be

7 provided in the confirmation order.

8 **XIII.**   **MODIFICATION OF PLAN**

9         The Plan may be corrected or modified, prior or subsequent to Confirmation, or prior

10 to consummation, after notice to interested parties and by Court order as provided by law.

11 **XIV.**   **LIQUIDATION ANALYSIS**

12         Pursuant to 11 U.S.C. §1129(a)(7), the Plan must provide that creditors not accepting

13 the Plan will receive at least as much under the Plan as they would receive in a liquidation

14 of the Debtors under Chapter 7 of the Bankruptcy Code. 10K believes that the distributions

15 to creditors under the Plan will exceed the recoveries which creditors would receive in

16 Chapter 7 liquidation of the estates. In a Chapter 7 liquidation, secured creditors would

17 receive their collateral, subject to the constructive trust and rescission claims of 10K. The

18 Plan provides for the payment of all Allowed Claims in full on the Effective Date or as

19 obligations become due under the original terms of the respective agreements, except the

20 claims of the plan proponent, 10K.

21         Plan distributions will meet or exceed what many creditors could expect in a

22 liquidation. In fact, to the extent 10K is successful on its rescission or constructive trust

23 claims in the State Court Litigation, even nominally "secured" creditors of the Debtor would

24 be left without collateral and without any recovery from the Debtor's estate in a liquidation.

25 The below chart summarizes the comparative treatment of claims under 10K's Plan and a

26 Chapter 7 liquidation.

**Comparative Treatment of Claims Under Plan**

| Claim | Chapter 7 Distribution | Creditor Plan Treatment |
|---|---|---|
| Class 1 - KPHV | Creditor must look to collateral for payment; will have unsecured claim and receive nothing if 10K rescission claim is successful | Allowed Claims Paid in Full on the Effective Date |
| Class 2 - 10K Judgment Claim | Class will look to collateral for payment, and may or may not be paid | Receives offset against purchase price under Option A; Receives property under Option B. |
| Class 3 - General Unsecured Claims | Likely not paid after 10K's rescission/constructive trust claim and secured creditor's claims to collateral | Allowed Claims Paid in Full on the Effective Date |
| Class 4 - 10K Secured Claim | Class will look to collateral for payment | Receives offset against purchase price under Option A; Receives property under Option B. |
| Class 5 - Pacific Coach/Spurlock | Creditor will look to collateral for payment | Reinstated and Paid pursuant to original terms of Trust Agreements |
| Class 6 - 10K Litigation Claim | With Stay Relief, will pursue rescission/constructive trust claims for title to property in State Court | Receives nothing under Option A until State Court Litigation is resolved; Receives property under Option B. |
| Class 7 - Administrative Claims | May receive nothing after resolution of 10K's rescission/constructive trust claims; Otherwise, is paid pro-rata only after liquidation by lienholders | Allowed claims paid In full on the Effective Date. |
| Class 8 - Equity Interests | Receives nothing and equity lost unless proceeds of a liquidation exceeds all claims, which total more than $400 million. | Retain interest in Debtor and receive any pro-rata distributions after other Plan payments. |
| Class 9 - Secured Tax Claim | Allowed claims paid in full over time. | Allowed claim paid in full on the Effective Date |

26

| | | |
|---|---|---|
| Class 10 - Hansen Foundation DIP Claim | Creditor must look to collateral for payment; will have unsecured claim and receive nothing if 10K rescission claim is successful | Allowed Claim Paid in Full on the Effective Date |

The Debtor previously filed a liquidation and valuation analysis at Docket No. 105 as part of its first disclosure statement. In the Debtor's analysis, which is excerpted here as Exhibit A, the Debtor acknowledges that even in a "best case" scenario, unsecured creditors could recover only 7% on their claims and equity would receive nothing. Any liquidation would be undertaken in future circumstances that cannot presently be predicted. Accordingly, the actual liquidation proceeds could vary if the Debtors' assets were otherwise liquidated.

## XV.   RISK ANALYSIS

Inherent in the Creditor's Amended Plan are standard business risks and the risk that the Sale will be delayed or cancelled. Regulatory changes, and changes in the market or political landscape could substantially alter the feasibility of developing the Property. In addition to the risk faced by most businesses, the business conducted by the Debtors is impacted by many other contingencies, including the following factors: the lack of available credit in today's economy both locally and nationally; the rising cost of living; inflation; changes in economic growth in Arizona; and changes to the projected growth in Arizona's population. Despite these risks, the Creditor's Amended Plan is workable and economically sound. The Plan will pay creditors more than they would receive if the Creditor's Plan were not confirmed, and the bankruptcy estate was liquidated instead.

## XVI.   TAX CONSEQUENCES

10K has not obtained a tax opinion and does not express any opinion as to the tax consequences of the Plan to the creditors or equity security holders. Interested parties are encouraged to obtain their own professional counsel to determine the tax consequences of the Plan.

BECAUSE 10K EXPRESSES NO TAX ADVICE, IN NO EVENT WILL 10K OR THEIR PROFESSIONAL ADVISORS BE LIABLE FOR ANY TAX CONSEQUENCES OF THE PLAN. CREDITORS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THIS PLAN.

## XVII. <u>RECOMMENDATION</u>

10K recommends that the Creditor's Amended Plan be approved as it is in the best interests of the Estate and creditors.

DATED: October 10, 2013.

10K, LLC

By: ___ s/ R. Randy Stolworthy _____
      Its Manager

MESCH, CLARK & ROTHSCHILD, P.C.

 –   and –

COHEN KENNEDY DOWD & QUIGLEY, P.C.

By: ___ s/ David J. Hindman _____
    Michael McGrath
    David Hindman
    Attorneys for 10K, LLC

Copy of the foregoing emailed October 10, 2013 to:

Michael W. Carmel
MICHAEL W. CARMEL, LTD.
80 East Columbus Avenue
Phoenix, AZ 85012
michael@mcarmellaw.com
Attorney for Debtor

and on the same date via the Court's ECF system
to all parties that have appeared in this case.

20E5894

# EXHIBIT A

| Notes | Assets | Acres | Low estimated recovery | | High estimated recovery | |
|---|---|---|---|---|---|---|
| | | | price / acre | | price / acre | |
| | **Tract A** | | | | | |
| 1 | Sale & Option Acres | 1,313.0 | 12,000 | 15,756,000 | 12,000 | 15,756,000 |
| | Remaning parcels | 240.0 | 7,500 | 1,800,000 | 8,500 | 2,040,000 |
| | | | | | | |
| | **Tract B** | 1,446.5 | 7,500 | 10,848,750 | 8,500 | 12,295,250 |
| 2 | Land release payment | | | -7,232,500 | | -7,232,500 |
| | Net recovery | | | 3,616,250 | | 5,062,750 |
| | | | | | | |
| | **Tract C** | | | | | |
| | Portion in Villages 1 & 2 | 2,508.5 | 7,500 | 18,813,750 | 8,500 | 21,322,250 |
| 3 | Land release payment | | | -12,542,500 | | -12,542,500 |
| | Net recovery | | | 6,271,250 | | 8,779,750 |
| | | | | | | |
| | Portion in Villages 3 & 4 | 6,000.5 | 3,500 | 21,001,750 | 5,500 | 33,002,750 |
| 3 | Land release payment | | | -30,002,500 | | -30,002,500 |
| | Net recovery | | | 0 | | 3,000,250 |
| | | | | | | |
| | **Total Proceeds** | | | **$27,443,500** | | **$34,638,750** |

**Chapter 7 Administrative Claims**

| | Low | High |
|---|---|---|
| Trustee Fees | 1,439,805 | 2,555,738 |
| Trustee's Counsel | 125,000 | 150,000 |
| Commissions and other professionals | 2,833,110 | 5,064,975 |
| Total liquidation costs | $4,397,915 | $7,770,713 |
| | | |
| **Net Proceeds Available to Creditors & Equity** | **$23,045,585** | **$26,868,038** |

**Esitmated Recovery to Creditors**

| | Estimated Allowed Claim | Low Estimated Amount Paid | High Estimated Amount Paid |
|---|---|---|---|
| Secured Claims (excluding land releases) | 517,485 | 517,485 | 517,485 |
| Ch. 11 Administrative & priority claims | 225,000 | 225,000 | 225,000 |
| General unsecured claims | 360,085,558 | 22,303,100 | 26,125,553 |
| | | | |
| **Percent recovery on unsecured claims** | | 6.2% | 7% |